## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GRANT & EISENHOFER P.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:17-cv-01722 |
| | ) | |
| v. | ) | |
| | ) | |
| REUBEN A. GUTTMAN and | ) | Judge Timothy J. Kelly |
| GUTTMAN, BUSCHNER & BROOKS, | ) | |
| PLLC, | ) | |
| | | |
| Defendants. | | |

## MOTION TO DISMISS
## OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Reuben A. Guttman

("Guttman") and Guttman, Buschner & Brooks PLLC ("GBB"), hereby move to dismiss the

Complaint filed by Plaintiff, Grant & Eisenhofer P.A. ("G&E") for failure to state any claims

upon which relief can be granted or, alternatively, for summary judgment pursuant to Federal

Rule of Civil Procedure 56.  In support of this motion, Defendants refer the Court to the attached

memorandum.

Respectfully submitted,

/s/ Susan E. Huhta
Susan E. Huhta (#453478)
Cassandra W. Lenning (#1013581)
Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West Suite
Washington, D.C.  20001
(202) 847-4414
SHuhta@outtengolden.com
CLenning@outtengolden.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GRANT & EISENHOFER P.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:17-cv-01722 |
| | ) | |
| v. | ) | |
| | ) | |
| REUBEN A. GUTTMAN and | ) | Judge Timothy J. Kelly |
| GUTTMAN, BUSCHNER & BROOKS, | ) | |
| PLLC, | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................... 4

LEGAL ARGUMENT ................................................................................................... 6

I.     Count II of G&E's Complaint for Tortious Interference Fails to State A Claim Against
Either Defendant ............................................................................................... 9

        A.     Count II must be dismissed against Guttman because he was a party to the
contract .................................................................................................. 9

        B.     Count II must be dismissed against GBB because the firm did not exist until after
G&E's contractual relationship with Ms. Brown ended ..................... 10

        C.     Count II must be dismissed because G&E has not pled its tortious interference
claims based on fraud with particularity ........................................... 11

        D.     Count II must be dismissed because the Complaint fails to contain sufficient
allegations of improper means or egregious conduct...........................12

II.     Count I Against Guttman for Breach of Fiduciary Duty Should be Dismissed for
Failure to State a Claim................................................................................... 14

        A.     Any alleged improper solicitation did not proximately cause the termination
of G&E's representation of Ms. Brown.............................................. 15

        B.     Guttman cannot be liable for any alleged acts taken in the course of his
representation of Ms. Brown which occurred after G&E fired him ..... 17

        C.     G&E's claim that Guttman breached his fiduciary duty in drafting its retainer
agreement with Ms. Brown fails as a matter of law ........................... 19

III.     Counts III for Unjust Enrichment Must Be Dismissed .................................... 21

IV.     Count IV Must Be Dismissed Because Constructive Trust Is Not A Valid Cause of
Action, And This Court Does Not Have the Authority To Impose It.............. 22

CONCLUSION............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Acosta Orellana v. CropLife Int'l.*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................ 6

*Ahuja v. Detica Inc.*,
   742 F. Supp. 2d 96 (D.D.C. 2010) ........................................................................ 7

*Al-Ibrahim v. Edde*,
   897 F. Supp. 620 (D.D.C. 1995) ........................................................................ 14

*Allen v. Napolitano*,
   774 F. Supp. 2d 186 (D.D.C. 2011) ...................................................................... 8

*Am. Fed. Grp., Ltd. v. Rotherberg*,
   No. 91 CIV. 7860, 2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003) ........................ 17

*Ananiev v. Wells Fargo Bank, N.A.*,
   968 F. Supp. 2d 123 (D.D.C. 2013) .................................................................... 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................ 8

*Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Found., Inc.*,
   607 F. Supp. 2d 185 (D.D.C. 2009) .................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 6

*Bed, Bath & Beyond of La Jolla v. La Jolla Village Square Venture Partners*,
   52 Cal. App. 4th 867 (1997) .............................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 6, 21

*Bergstein v. Stroock & Stroock & Lavan LLP*,
   236 Cal. App. 4th 793, 187 Cal. Rptr. 3d 36 (2015) ............................................ 19

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007) ............................................................................ 12

*Bowhead Info. Tech. Servs., LLC. v. Catapult Tech. Ltd.*,
   377 F. Supp. 2d 166 (D.D.C. 2005) ................................................................ 13-14

*Connors, Fiscina, Swartz & Zimmerly v. Rees*,
   599 A.2d 47 (D.C. 1991) .................................................................................... 16

*Curry v. Del Priore,*
    941 F.2d 730 (9th Cir. 1991) ................................................................23-24

*Donohoe v. Watt,*
    546 F. Supp. 753 (D.D.C. 1982) ............................................................... 10

*Draim v. Virtual Geosatellite Holdings, Inc.,*
    631 F. Supp. 2d 32 (D.D.C. 2009) ............................................................. 18

*Dubois v. Washington Mut. Bank,*
    No. 09-2176, 2010 WL 3463368 (D.D.C. Sept. 3, 2010) ........................................ 20

*Econ. Research Servs., Inc. v. Resolution Econ., LLC,*
    208 F. Supp. 3d 219 (D.D.C. 2016) ............................................................ 18

*Evans v. First Mount Vernon, ILA,*
    786 F. Supp. 2d 347 (D.D.C. 2011) ............................................................. 7

*Flynn v. Tiede–Zoeller, Inc.,*
    412 F. Supp. 2d 46 (D.D.C. 2006) .............................................................. 7

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,*
    944 A.2d 1055 (D.C. 2008) .................................................................... 21

*Genetic Sys. Corp. v. Abbott Labs.,*
    691 F. Supp. 407 (D.D.C. 1988) ............................................................... 13

*Goodbody & Co., Inc. v. Rigel,*
    339 So. 2d 272 (Fla. App. 1976) .............................................................. 11

*Hollis v. U.S. Dep't of Army,*
    856 F.2d 1541 (D.C. Cir. 1988) ................................................................ 7

*IMark Mktg. Servs., LLC v. Geoplast S.p.A.,*
    753 F. Supp. 2d 141 (D.D.C. 2010) ............................................................. 9

*Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins,*
    726 F. Supp. 1 (D.D.C. 1989) ............................................................. 12, 13

*Kamen v. IBEW,*
    505 F.Supp.2d 66 (D.D.C. 2007) ................................................................ 8

*Kenneally v. Bosa Cal. LLC,*
    No. 09-cv-2039, 2011 WL 1045136 (S.D. Cal. Mar. 22, 2011) ................................... 24

*King & King, Chartered v. Harbert Int'l, Inc.,*
    503 F.3d 153 (D.C. Cir. 2007) ................................................................. 9

*Klaman v. Barmak*,
  634 F. Supp. 2d 56 (D.D.C. 2009) ........................................................................ 20

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ............................................................................... 6

*Ling Yuan Hu v. George Washington Univ.*,
  766 F. Supp. 2d 236 (D.D.C. 2011) ..................................................................... 20

*Macharia v. United States*,
  238 F. Supp. 2d 13 (D.D.C. 2002) ....................................................................... 23

*Mercer Mgmt. Consulting, Inc. v. Wilde*,
  920 F. Supp. 219 (D.D.C. 1996) .......................................................................... 14

*Novinger v. E.I. DuPont De Nemours & Co.*,
  809 F.2d 212 (3d Cir. 1987) ................................................................................. 24

*Olsen v. Harbison*,
  119 Cal. Rptr. 3d 460 (2010) ......................................................................... 18, 19

*Phillips v. Mabus*,
  894 F. Supp. 2d 71 (D.D.C. 2012) ....................................................................... 18

*Pioli v. Town of Kirkwood*,
  117 A.D. 2d 954 (N.Y.A.D. 1986) ........................................................................ 11

*PMC v. Saban Entm't.*,
  45 Cal. App. 4th 579 (1996) ................................................................................ 14

*Press v. Howard Univ.*,
  540 A.2d 733 (D.C. 1988) ...................................................................................... 9

*Robertson v. Levy*,
  197 A.2d 443 (D.C. 1964) .................................................................................... 11

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*,
  60 F. Supp. 3d 36 (D.D.C. 2014) ......................................................................... 22

*Shapiro, Lifshitz & Schram, P.C. v. R.E. Hazard*,
  24 F. Supp. 2d 66 (D.D.C. 1998) ......................................................................... 14

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*,
  59 F.Supp.2d 27 (D.D.C. 1999) ........................................................................... 12

*Teltschik v. Williams & Jensen, PLLC*,
  683 F. Supp. 2d 33 (D.D.C. 2010) ................................................................... 9, 15

*In re Townshend Patent Litig.*,
    No. 02 Civ. 04833, 2004 WL 1920009 (N.D. Cal. Aug. 25, 2004) ........................................ 11

*Tunica–Biloxi Tribe of La. v. United States*,
    577 F. Supp. 2d 382 (D.D.C. 2008) ................................................................................ 8

*U. S. ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir. 1981) ................................................................................... 13

*United States v. BCCI Holdings (Luxembourg), S.A.*,
    46 F.3d 1185 (D.C. Cir. 1995) .............................................................................. 22-23

*Weaver v. Gross*,
    605 F. Supp. 210 (D.D.C. 1985) ................................................................................... 9

*William J. Davis, Inc. v. Slade*,
    271 A.2d 412 (D.C. Ct. App. 1970) ........................................................................... 14

*Winters v. Mulholland*,
    33 So. 3d 54 (Fla. Dist. Ct. App. 2010) ................................................................. 16-17

**Statutes**

3 USC § 3730(d) ........................................................................................................... 22

Business & Professional Code § 6147(a)(4) ........................................................... 6, 14

Cal. Bus. & Prof. Code. § 6148(b) ................................................................................. 2

**Rules**

Cal Rule Prof. Conduct 3-700(D) ................................................................................... 2

Fed. R. Civ. P. 12(d) ...................................................................................................... 7

Fed. R. Civ. P. 56(a) ...................................................................................................... 8

Fed. R. Civ. P. 9(b) ........................................................................................................ 6

**Other Authorities**

5 Charles Alan Wright & Arthur. R. Miller, Federal Practice and Procedure § 1216,
    pp. 235–236 (3d ed. 2004) ....................................................................................... 21

5 Witkin, Summary 10th Torts § 733 (2005) ................................................................. 14

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed.
    2004) ............................................................................................................................ 7

8 Fletcher Cyc. Corp. § 4012 ................................................................................................... 11

## INTRODUCTION

This action is G&E's fourth and latest attempt to obtain more than it is lawfully owed for its past representation of Beverly Brown, the plaintiff-relator in a False Claims Act (FCA) case against Celgene Corporation. *See United States ex rel. Beverly Brown v. Celgene Corp.*, No. 10-Civ.-3165 (C.D. Cal.) ("*Celgene*").  This case arises out of the same events and seeks the same relief as three previously filed actions, two which remain pending and one which G&E voluntarily dismissed.  After G&E refused an offer to continue to litigate as co-counsel for Ms. Brown and withdrew from *Celgene* because it refused to work with Defendants, Ms. Brown pursued the *Celgene* case to successful resolution.  G&E now seeks compensation for its work on the *Celgene* case far in excess of its lawful entitlement and far in excess of its reasonable fees and expenses.

In May 2015, after it withdrew from the case, G&E filed a notice of lien in *Celgene*, in the United States District Court for the Central District of California.  *Celgene*, No. 10 Civ 3165 (C.D. Cal. June 3, 2015), Dkt. 190.   In September 2015, G&E sued Mr. Guttman and his law partners in the same Court, asserting – as it does now – tortious interference and breach of fiduciary duty claims in connection with Ms. Brown's and other clients' voluntary and uncoerced decisions to have Guttman and GBB assume primary responsibility for their cases.  *Grant & Eisenhofer, P.A. v. Guttman*, No. 15-Civ.-01483 (D.D.C. Sept. 10, 2015), Dkt. 1.[1]

Having failed to take any action to vindicate its alleged rights under its notice of lien in the *Celgene* case, and years after voluntarily dismissing its earlier action filed in this

---

[1] The present case so carelessly copies and duplicates the 2015 complaint G&E filed against Defendants that G&E alleges it had an office in the District of Columbia until "earlier this year," an allegation it made in 2015.  Compl. ¶ 9.  G&E's D.C. office has been closed since 2015.

Court, on August 11, 2017, G&E filed suit in the U.S. District Court for the Central

District of California, asserting claims against Ms. Brown and Defendants' co-counsel in

*Celgene*, the law firms of Bienert, Miller & Katzman, PLLC and Richard Harpootlian P.A.

Law.  *Grant & Eisenhofer, P.A. v. Brown,* No. 17 Civ. 05968 (C.D. Cal.), Dkt. 1.  Despite the

publicity ginned from that complaint – and an amended complaint – G&E still has not

served the defendants in that case.

The gravamen of this case – and the yet to be served California complaint – is

G&E's claim for its fees in *Celgene*.  The claim seems simple enough, and it could and

should have been decided through G&E's presentation of its claim for costs and fees to the

district court in California presiding over *Celgene*.  G&E has both refused to produce its

billing records to the Court so that it can assess reasonableness, and repeatedly refused

requests by its former client – Ms. Brown – to provide backup documentation for its

asserted fee claims.  Under California law and ethical rules, this request should have been

honored within ten days.  Cal. Bus. & Prof. Code. § 6148(b); Cal Rule Prof. Conduct 3-

700(D).  Instead, G&E has ignored it for five months.

In the present lawsuit, G&E has made allegations that serve no purpose other than to

damage Defendants' reputation and extort payment far in excess of G&E's legal

entitlement (if any) to its fees and costs.  Many of G&E's factual assertions are recklessly

false.  These include:

- **G&E's Claim that Guttman was a "director," who "shared in the profits of G&E."**  The implication that Guttman or any other nominal "director" was or is tantamount to a partner is false.  *Cf.* Compl. ¶ 10.  As G&E's public filings with the Delaware Secretary of State show, the only shareholders or "Directors" at G&E since its inception have been Jay Eisenfofer and Stuart Grant.  Ex. 1 (G&E filings for 1997, 2008, 2014, & 2015).  All profit sharing at G&E is gratuitous or negotiated (rarely) via individual contracts.  None of G&E's nominal directors are actual partners (or parties to any partnership agreement), and the title of

"director" is an honorific with no legal significance.[2]

- **Tortious interference and breach of fiduciary claims.**  Guttman did not improperly solicit Ms. Brown.  G&E admits that Guttman brought in Ms. Brown as a client to the firm and that Guttman was responsible for bringing the *Celgene* case.  As Ms. Brown asserted in a declaration filed in *Celgene* yesterday, she liked and trusted Guttman. She has never even met or spoken to Eisenhofer or Grant, and did not like the senior attorney assigned to the case. She would not have continued to pursue the case without Guttman as her counsel.  Moreover, G&E's claim of Guttman's impropriety is belied by its own allegations that it attempted to contact Ms. Brown on April 23, 2015.  Guttman was never informed about or invited to participate in this call.  G&E makes no allegations that Mr. Guttman relayed false or improper information to Ms. Brown and does not even allege he told her to leave G&E with any specificity.

- **Guttman's Termination for Allegedly Abusing Staff.**  Guttman was not terminated for abusing staff.  *Cf.* Compl. ¶¶ 18-20.  The April 5, 2015 email from Guttman to G&E senior attorney Daniel Berger, which G&E places at the heart of its Complaint (*id.* ¶ 20), tells the true story.[3]  In March 2015, Guttman announced his planned resignation because he was uncomfortable with various unethical practices by G&E and its principals, but he gave nine months' notice to avoid any disruption to cases and, as the Complaint admits, so as "not to blind side anyone." *Id.* ¶ 15.  Shortly after he raised some, but by no means all, of the ethical issues in his April 5, 2015 email, G&E responded by informing Guttman that he was terminated, effective immediately.  *See* Ex. 2 (April 5, 2015 email).  These issues include:

  o  G&E named partner Stuart Grant's sexual harassment of female associates;

  o  Pressure by G&E named partner Jay Eisenhofer to settle cases against client wishes and contrary to clients' best interests so that G&E could save costs (including an incident where Eisenhofer became so enraged that a client wanted to continue to litigate that he physically threatened Guttman with his fist at a meeting to attempt to pressure Guttman to coerce the client to settle); and

  o  G&E's misleading representations to prospective clients regarding its experience and success in litigating pharmaceutical mass tort cases.

---

[2] Guttman has other breach of contract claims as to monies G&E owes him that may be asserted as counterclaims if the case survives this motion to dismiss.

[3] When juxtaposed against the April 5, 2015 email that G&E cites, paragraph 20 of G&E's complaint appears to be an attempt to mislead Court.

Should this case proceed to discovery and ultimate adjudication on the facts, Defendants are confident that G&E will be revealed as the only tortious actor in this case, both in its dealings with Defendants and in its dealings with Ms. Brown and other clients. But the Court need not ever reach these issues because, for the reasons laid out below, Defendants are entitled to dismissal of all claims against them, either pursuant to Federal Rule of Civil Procedure 12(b)(6) or, to the extent the Court bases disposition on any of the exhibits attached to this motion, pursuant to Rule 56.

## STATEMENT OF UNDISPUTED FACTS

Defendant Guttman worked as an attorney at G&E and led its False Claims Act practice from 2007 to 2015.  Guttman was not hired as a partner or director (Compl. ¶ 10), and he never became a "director" in any legally significant sense of the word, as this title was merely honorific.  Eisenhofer and Grant have been the firm's only shareholders and directors throughout G&E's existence. Ex. 1 (G&E's public filings with the Delaware Secretary of State for 1997, 2008, 2014, and 2015).

Guttman brought Beverly Brown in as a client to the firm in 2009.  *See* Compl. ¶ 11 ("Ms. Brown began her relationship with G&E in 2009 through Guttman").  Ms. Brown resides in California and worked for the Celgene Corporation in California.  *Id.* ¶ 12.

The only agreement between Ms. Brown and G&E in *Celgene* provided that G&E would represent Ms. Brown on a contingency basis whereby if the case proved successful, G&E would take its lodestar plus a forty percent share of any amount awarded to Ms. Brown.  Compl. ¶ 11; *see also* Ex. 3 (Retainer Agreement), filed under seal.  G&E's retainer agreement with Ms. Brown was in the form of a letter from G&E principal Jay Eisenhofer, dated October 19, 2009.  *Id.*  The retainer was mailed to Ms. Brown at her

4

address in West Covina, California.  Compl. ¶ 12.  She signed it seven days later, on October 26, 2009.  Ex. 3.

G&E filed the *Celgene* case on Ms. Brown's behalf in the Central District of California in 2010.  Compl. ¶ 13.  Guttman served as lead counsel for Ms. Brown in *Celgene*. *Id.* ¶ 12, 14.  In addition to G&E, Ms. Brown was represented in *Celgene* by Bienert, Miller, and Katzman, PLC, which served as local California counsel, and then later by Dick Harpootlian, P.A.  *Id*. ¶¶ 32-33.[4]

G&E chose to terminate Guttman's employ in mid-2015, in the midst of the ongoing *Celgene* litigation.  *See Id.* ¶ 21 ("G&E's managing directors had a videoconference in which they asked Guttman to leave.").  Ms. Brown terminated her relationship with G&E contemporaneously with Guttman's departure from G&E.  *Id.* ¶ 8.  According to Ms. Brown, as soon as she heard that G&E was terminating Guttman, she "knew immediately" that she was "going to follow Reuben to wherever he went after leaving G&E."  Ex. 4 (B. Brown Decl.) ¶ 33.

After Guttman left G&E, G&E thereafter engaged in negotiations regarding possible shared representation of Ms. Brown going forward, but G&E rejected the terms offered by co-counsel and the firms could not reach agreement.  Compl. ¶ 34.  As set forth by former U.S. District Court Judge Nancy Gertner, who directly negotiated with Jay Eisenhofer in an attempt to keep G&E involved in *Celgene*, negotiations failed because G&E refused to work with Mr. Guttman in any capacity.  *See* Ex. 5 (N. Gertner Decl.), ¶¶ 1, 7-9; *see also id.* at ¶¶ 5-6.  Ultimately, G&E voluntarily withdrew from representation of Ms. Brown in *Celgene* on May 8, 2015.  Notice of Motion and Motion to Withdraw, *Celgene Corp.*, No. 10

---

[4] Although not identified in Plaintiff's Complaint, Ms. Brown was also represented by Nancy Gertner, a former United States District Judge for the District of Massachusetts.

Civ. 3165 (C.D. Cal. May 8, 2015), Dkt. 177.

Defendant GBB was incorporated later that month, on May 26, 2015.  *See* Ex. 6 (GBB Certificate of Organization and Articles of Organization, dated May 26, 2015).

On June 21, 2017, Ms. Brown informed G&E by letter that she was exercising her right to "void" her retainer agreement with G&E due to its failure to comply with California's Business & Professional Code § 6147(a)(4).  Ex. 7 (June 21, 2017 Letter), at p. 2.

## LEGAL ARGUMENT

 Upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must dismiss a complaint, or any claim therein, that fails to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint must recite facts sufficient to at least "raise a right to relief above the speculative level."  *Id.* at 555.  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action" is insufficient, as are "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555, 557).  In ruling on a motion to dismiss, the Court may not draw inferences which are unsupported by the facts as alleged in the complaint.  *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Allegations of fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b). "Under District of Columbia law, an allegation of fraud must include the following essential elements: (1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed."  *Acosta Orellana v. CropLife Int'l.*, 711 F. Supp. 2d 81, 96 (D.D.C. 2010) (internal

quotation marks omitted).  "In this Circuit, the circumstances that the claimant must plead

with particularity include matters such as the time, place, and content of the false

misrepresentations, the misrepresented fact, and what the opponent retained or the claimant

lost as a consequence of the alleged fraud."  *Id.* (quoting *Chelsea Condo. Unit Owners*

*Ass'n v. 1815 A. St., Condo. Grp., LLC*, 468 F. Supp. 2d 136, 146 (D.D.C. 2007)).

    Where matters outside the pleadings are presented with a motion to dismiss and not

excluded by the court, then the motion must be treated as one for summary judgment under

Rule 56.  Fed. R. Civ .P. 12(d).  "If, however, documents are referenced in the complaint,

those documents are considered incorporated into the complaint by reference."  *Evans v.*

*First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 352 (D.D.C. 2011) (citing *Abhe & Svoboda,*

*Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).  Further, "documents that are 'integral

to the claim' may also be considered in resolving motions to dismiss under Rule 12(b)(6)

without converting the motion to a summary judgment motion."  *Id.* (quoting *Meijer v.*

*Biovail Corp.,* 533 F.3d 857, 867 (D.C. Cir. 2008)).[5]

    The decision to convert a motion to dismiss into a motion for summary judgment is

committed to the discretion of the trial court.  *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 102

(D.D.C. 2010); *Flynn v. Tiede–Zoeller, Inc.,* 412 F. Supp. 2d 46, 50 (D.D.C. 2006); *see*

*also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366

at 159 (3d ed. 2004)).  It is appropriate to convert a motion to dismiss to one for summary

judgment where it involves discrete legal issues and discovery would not change the

relevant facts.  *See, e.g., Hollis v. U.S. Dep't of Army*, 856 F.2d 1541, 1544 (D.C. Cir.

1988) ("Since Rule 12(b)'s notice-and-opportunity requirement is designed to 'insure [ ]

---

[5] The documents attached to this motion are integral to the claims Defendants seek to dismiss,
including Ex. 2, the April 5, 2015, which G&E mischaracterizes in its Complaint.

that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proof to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment,' no useful purpose can be served by its application where it is clear that the dispositive facts will remain undisputed and unchanged.") (internal footnote omitted); *Tunica–Biloxi Tribe of La. v. United States,* 577 F. Supp. 2d 382, 405 (D.D.C. 2008) (motion to dismiss converted to one for summary judgment "without providing notice or the opportunity for discovery to the parties" because the parties were "not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete"); *Kamen v. IBEW,* 505 F.Supp.2d 66, 72 (D.D.C. 2007).

Summary judgment may be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-movant may not "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The non-movant must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. "By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment." *Allen v. Napolitano*, 774 F. Supp. 2d 186, 195 (D.D.C. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). Moreover, "[i]f the evidence [proffered by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted); *see also Allen*, 774 F. Supp. 2d at 197 (granting converted motion to dismiss because it was clear from the evidence provided that

defendant was entitled to judgment as a matter of law).

## I.   Count II of G&E's Complaint for Tortious Interference Fails to State A Claim Against Either Defendant.

The gravamen of G&E's tortious interference claim is that "Guttman and the [GBB] tortiously interfered with G&E's business relationships by soliciting Ms. Brown while Guttman was still a director of G&E." Compl. ¶ 48; *see also id.* at ¶ 1 ("This is an action for . . . tortious interference with contract"). To assert a claim for tortious interference with contract, a plaintiff must allege: (1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach. *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 56 (D.D.C. 2010), *aff'd*, 748 F.3d 1285 (D.C. Cir. 2014). For the following reasons, G&E has failed to state a valid tortious interference with contract claim against either Guttman or GBB, and the claim should be dismissed.

### A.   Count II must be dismissed against Guttman because he was a party to the contract.

Under D.C. law, a tortious interference with contract claim will not lie against a party to the contract at issue. *See, e.g., King & King, Chartered v. Harbert Int'l, Inc.*, 503 F.3d 153, 157 (D.C. Cir. 2007) (claim for tortious interference with contract failed where no third party who interfered with the contract identified); *IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 163 (D.D.C. 2010) ("tortfeasor must be a third party to the contract, as a party cannot tortiously interfere with its own contract."). An employee or agent of a corporate party to a contract is himself, as a matter of law, treated as a party to that contract for purposes of alleged tortious interference. *See, e.g., Press v. Howard Univ.,* 540 A.2d 733, 736 (D.C. 1988) (officers of university could not tortiously interfere with university's contracts); *Weaver v. Gross*, 605 F. Supp. 210, 216 (D.D.C. 1985) (dismissing tortious interference with contract claim "[b]ecause a

corporation cannot act other than through its officers and agents, [so] a corporate officer is an implied party to the contract and, therefore, does not have the third-party status necessary to be liable for tortious interference with contract."); *Donohoe v. Watt*, 546 F. Supp. 753, 757 (D.D.C. 1982) (dismissing claim for tortious interference with contract brought against officer of corporation).

According to G&E's Complaint, Guttman was a "director" at G&E in 2009 when "Ms. Brown executed a retainer agreement with G&E," as well as in April 2015 when Ms. Brown terminated G&E as her counsel.  Compl. ¶¶ 11, 28.  Thus, during all relevant times, Guttman was an employee of the firm.  As such, Guttman was a party to the retainer agreement between Ms. Brown and G&E, and therefore could not tortiously interfere with it.  Accordingly, G&E's claim for tortious interference with contract, as to Guttman, must be dismissed.

> **B.      Count II must be dismissed against GBB because the firm did not exist until after G&E's contractual relationship with Ms. Brown ended.**

G&E's tortious interference with contract claim against GBB must be dismissed as well, because GBB did not exist at the time of the alleged tortious conduct or at any point in time during which G&E had a contractual relationship with Ms. Brown.  As alleged in G&E's Complaint, "on Friday, April 24, 2015, Guttman delivered what purported to be his resignation letter from G&E, and enclosed a letter from Ms. Brown dated Tuesday April 21, 2015, terminating G&E as her counsel."  Compl. ¶ 28.  Thus, according to G&E's complaint, G&E's contractual relationship with Ms. Brown terminated, at the latest, on April 24, 2015.

GBB cannot be liable for tortiously interfering with G&E's contractual relationship with Ms. Brown, however, because GBB did not exist as a corporate entity until May 26, 2015, more than a month after G&E's contractual relationship with Ms. Brown ended, and several weeks after G&E withdrew as counsel to Ms. Brown in *Celgene*.  Ex. 6 (GBB Certificate of

Organization and Articles of Organization, dated May 26, 2015); *see also* Notice of Motion and

Motion to Withdraw, *Celgene Corp.*, No. 10 Civ. 3165 (C.D. Cal. May 8, 2015), Dkt. 177.

Tellingly, Ms. Brown's April 2015 termination letter to G&E referenced in the Complaint (¶ 28)

indicated only that she had retained Guttman to personally continue representing her, without

any reference to GBB.  *See* Ex. 8 (Termination Letter).

      Certificates of incorporation denote the inception of corporate existence.  The law is clear

that a corporation cannot be liable for conduct occurring prior to the corporation's existence.

*See, e.g., Robertson v. Levy*, 197 A.2d 443, 447 (D.C. 1964).  With respect to conduct occurring

prior to their issuance, only individuals, and not the corporation, may be held liable.  *Id.*; *see also*

*In re Townshend Patent Litig.*, No. 02 Civ. 04833, 2004 WL 1920009, at *5 (N.D. Cal. Aug. 25,

2004) ("a corporation cannot be liable for actions taken prior to the date of its incorporation.");

*Pioli v. Town of Kirkwood*, 117 A.D. 2d 954, 499 (N.Y.A.D. 1986) (corporation properly

dismissed from action where it did not come into existence until two years after alleged tort was

committed); *Goodbody & Co., Inc. v. Rigel*, 339 So. 2d 272, 274 (Fla. App. 1976) (absent

express or implied assumption of liability, corporation is not liable for contractual or tort

liabilities of a preexisting partnership); 8 Fletcher Cyc. Corp. § 4012 ("A corporation that is

formed by partners or other legal associates does not ordinarily become liable for the debts, torts

or negligent acts of the partners or associates committed before the incorporation").  Because

GBB did not exist at any time during which G&E had a contractual relationship with Ms. Brown,

it cannot be held liable for any alleged interference with that contractual relationship.  Thus,

G&E's tortious interference with contract claim against GBB must be dismissed.

      **C.**      **Count II must be dismissed because G&E has not pled its tortious**
                     **interference claims based on fraud with particularity.**

      In addition, G&E's tortious interference claims against GBB and Guttman sound in fraud

and thus must be plead with particularity pursuant to Rule 9(b).  "Although claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).   Here, G&E's claims sound in fraud, but the allegations as to Guttman do not come close to describing the "what," "when," and "how" of Guttman's supposed wrongful inducement that convinced Ms. Brown to terminate G&E and must be dismissed.  *See id.* at 508-09 (dismissing tortious interference claims for lack of particularity).  As to GBB's other principals, the Complaint is devoid of ***any*** factual allegations as to how they allegedly induced Ms. Brown to terminate G&E, and no such allegations can be plead in good faith.

### D.    Count II must be dismissed because the Complaint fails to contain sufficient allegations of improper means or egregious conduct.

Finally, Count II should be dismissed for the additional reason that the Complaint utterly fails to allege any facts showing improper solicitation.  "A necessary prerequisite to recovery under this theory is that the interference alleged have been both intentional and improper."  *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. 1, 6 (D.D.C. 1989).  Further, "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Id.* (quoting *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988)).  Rather, to demonstrate liability for tortious interference, the alleged "conduct must be more egregious, for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement."  *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,* 59 F.Supp.2d 27, 34 (D.D.C. 1999) (granting motion to dismiss because "plaintiff cannot demonstrate the requisite intent required for tortious interference" where "complaint is

silent as to . . . any statements that constitute slander, libel, or misrepresentations or that disparage plaintiff").

The entirety of G&E's allegations regarding tortious interference boils down to the wholly conclusory assertions that Guttman "solicited" and/or "stole" G&E clients.  *See, e.g.,* Compl. ¶¶ 1, 25, 29, 32-33, 43, 48.  Such allegations, without any factual support, are too vague and conclusory to state a claim for relief.[6]  *See, e.g., Int'l City Mgmt.*, 726 F. Supp. at  6–7 (complaint failed to state cause of action for tortious interference where "sweeping allegations" regarding alleged tortfeasor's communications to client were "vague and conclusory"); *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988) (dismissing tortious interference claim because allegations that defendant "engaged in solicitation" were "too vague" and insufficient to state a claim for relief).  Indeed, the Complaint is devoid of any allegation that Guttman or GBB (which did not exist at the time) employed any "improper" means or "egregious" conduct in soliciting or stealing G&E's clients.  Noticeably absent from the Complaint is any allegation whatsoever regarding the content of Guttman's alleged "solicitation" of Ms. Brown.

Quite simply, even if Guttman did *everything* G&E accuses him of (which he did not), solicitation of G&E's clients, standing alone without more egregious conduct, is insufficient to state a claim for tortious interference with contract.  *See, e.g., Bowhead Info. Tech. Servs., LLC. v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 175 (D.D.C. 2005) (granting motion to dismiss

---

[6] Likewise, these conclusory allegations, devoid of any facts whatsoever, cannot not meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b).  In cases sounding in fraud '"the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud.'  The rule serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."  *U. S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (citation omitted).

where plaintiff did not allege that defendant's "solicitation of the [client] involved coercion or the use of false information, or indeed that it involved anything other than a general intent to interfere . . . which is insufficient to impose liability."); *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 239 (D.D.C. 1996) (entering judgment for defendants on tortious interference claim because although soliciting clients interfered with plaintiff's business relationships, "the Court cannot find that they acted with the level of wrongful intent," where they did not, for example, "wrongfully utilize confidential information in soliciting the work").

For all the foregoing reasons, G&E's claim for tortious interference claim against both Defendants must be dismissed.[7]

## II.    Count I Against Guttman for Breach of Fiduciary Duty Should be Dismissed for Failure to State a Claim.

G&E alleges that Guttman breached his fiduciary duties in several different ways, which

---

[7] An additional ground exists for dismissal of G&E's tortious interference with contract claim. G&E's retainer agreement with Ms. Brown is governed by California law, *see Shapiro, Lifshitz & Schram, P.C. v. R.E. Hazard*, 24 F. Supp. 2d 66, 80-82 & n.18 (D.D.C. 1998) (California law applies to question of enforceability of retainer agreement between D.C. law firm and California client), and under California law, G&E's retainer with Ms. Brown was voidable for its failure to comply with California's Business and Professions Code, which requires all contingency fee agreements to include a "statement that the fee is not set by law but is negotiable between attorney and client." Cal. Bus. & Prof. Code § 6147(a)(4); *id.* § 6147(b) (failure to comply with subsection (a)(4) "renders the agreement voidable at the option of the plaintiff , and the attorney shall thereupon be entitled to collect a reasonable fee."). *See also* Ex. 3 (Retainer Agreement). Because Ms. Brown's retainer agreement with G&E did not contain this language, she exercised her right to void the contract. *See* Ex. 7 (June 21, 2017 Letter), at p. 2. A void contract, such as the contingency fee agreement between Ms. Brown and G&E, cannot be enforced by either party to the contract, and likewise cannot form the basis of a tortious intereference with contract claim. *See Al-Ibrahim v. Edde*, 897 F. Supp. 620 (D.D.C. 1995) (illegal contracts are generally void and unenforceable); *William J. Davis, Inc. v. Slade*, 271 A.2d 412, 414 (D.C. Ct. App. 1970) (one who contracts in violation of law cannot enforce the contract once it has been declared void); 5 Witkin, Summary 10th Torts §733 (2005) (collecting cases); *Bed, Bath & Beyond of La Jolla v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 877 (1997) (a voidable contract cannot serve as the basis for an intentional interference with contract claim); *PMC v. Saban Entm't.*, 45 Cal. App. 4th 579 (1996) (same). But the Court need not rule on this ground, as the Central District of California is already considering contract enforceability.

fall into three basic categories: 1) improperly soliciting Ms. Brown while still in G&E's employ,

Compl. ¶ 43 ("breaking his promise to act jointly with G&E in coordinating his departure . . .

surreptitiously soliciting Ms. Brown to leave G&E . . . [and] failing to inform Ms. Brown and

other clients of their rights and options with respect to selection of counsel"); 2) taking various

steps in *Celgene* after G&E fired him, which G&E claims caused it harm, *id*. ("refusing to vouch

for attorney time on the *Celgene* Matter that he compiled and oversaw while at G&E . . .

refusing, despite repeated demands, to submit the time and expenses G&E incurred in the

*Celgene* Matter in order intentionally to prejudice G&E . . . and categorically refusing to provide

G&E with information about the settlement of the *Celgene* Matter"); and 3) drafting G&E's

retainer agreement with Ms. Brown, *id*. ("drafting the *Celgene* Agreement in a manner that,

*arguendo*, subjects it to challenge under California law").   None of these allegations state a

claim for breach of fiduciary duty.

   To make a legally cognizable claim of breach of fiduciary duty under District of

Columbia law, a plaintiff must allege facts sufficient to show: (1) the existence of a fiduciary

relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries

that were proximately caused by the breach of the fiduciary duties.  *Armenian Genocide Museum

& Memorial, Inc. v. Cafesjian Family Found., Inc.,* 607 F. Supp. 2d 185, 190–191 (D.D.C.

2009).  Proximate cause is a question of law when, based on the evidence, "no reasonable jury

could rationally conclude that proximate cause existed."  *Teltschik*, 683 F. Supp. 2d at 52.  For

the reasons that follow, G&E cannot prevail on a breach of fiduciary claim against Guttman.

### A.   Any alleged improper solicitation did not proximately cause the termination of G&E's representation of Ms. Brown.

With regard to Guttman's alleged improper solicitation of Ms. Brown and related actions,

even assuming Guttman owed a fiduciary duty after G&E informed him that he was being

terminated, this aspect of G&E's breach of fiduciary duty claim fails because it indisputably was not the proximate cause of G&E's failure to have a continuing relationship with Ms. Brown after Guttman left the firm.

As alleged in G&E's complaint, following Guttman's departure, G&E was offered an opportunity to continue representing Ms. Brown together with Guttman as co-counsel.  Compl. ¶ 26.  That is to say, G&E admits in its Complaint that *after* Guttman's alleged improper solicitation, G&E had the opportunity to continue representing Ms. Brown in *Celgene*. According to the Complaint, G&E did not in fact continue as co-counsel to Ms. Brown because it failed to successfully negotiate a co-counseling agreement with its co-counsel in *Celgene*.  *See* Compl. ¶ 26 (proposed arrangement "was not acceptable to G&E"), *id.* ¶ 34 (G&E "was not willing" to accept the terms co-counsel offered); *see also* Ex. 5 (N. Gertner Decl.) at ¶ 9 (negotiations failed because G&E refused under any circumstances to continue a co-counseling relationship with Guttman).   Thus, according to the allegations of G&E's own Complaint, G&E's unsuccessful negotiations with its co-counsel in *Celgene* was the proximate cause of G&E losing Ms. Brown as a client and failing to continue on as co-counsel.  *See, e.g.*, *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47, 51 (D.C. 1991) (finding attorney's "misrepresentations" about law firm before departing "were not the cause, proximate or otherwise" of clients choosing to leave the firm because clients "had a close and satisfying professional relationship with" the departing attorney, "no relationship with any other attorney" at the firm, and "they would have followed [the departing attorney] anywhere."); *cf. Winters v. Mulholland*, 33 So. 3d 54, 59 (Fla. Dist. Ct. App. 2010) (finding "fatal" lack of proximate cause where attorney left law firm and clients followed, but plaintiff failed to present any evidence that departing attorney's "lies and misrepresentations" caused the clients to leave).

The alleged improper solicitations could not have caused G&E's relationship with Ms. Brown to end prematurely for another reason.  As alleged in the Complaint, Guttman was the only reason G&E ever had a relationship with Ms. Brown, and Guttman was the lead lawyer in the litigation G&E brought on behalf of Ms. Brown.  *See* Compl. ¶¶ 11, 13-14.  G&E also admits that it chose to terminate Guttman's employ in the midst of the on-going *Celgene* litigation.  *Id.* ¶ 21.  Notably, G&E does not allege, *even upon information and belief*, that Ms. Brown would have stayed with G&E if Guttman had not allegedly solicited her.  Her own testimony belies this.

As Ms. Brown makes clear in her declaration, no matter what anyone at G&E might have said to her, she was going to maintain Guttman as her counsel.  Ex. 4 (B. Brown Decl.), ¶ 32.  Thus, whatever Guttman might have said to Ms. Brown (and Guttman vehemently disputes that he ever improperly solicited her), any such solicitation was not the proximate cause of Ms. Brown's decision to terminate her relationship with G&E.  *See, e.g., Am. Fed. Grp., Ltd. v. Rotherberg*, No. 91 CIV. 7860 (THK), 2003 WL 22349673, at *8 (S.D.N.Y. Oct. 14, 2003) (finding defendant's "pre-departure solicitation" of plaintiff's clients was not "the primary reason" for plaintiff's loss of business, where it was "apparent" that defendant "had developed professional, and in some cases, personal relationships with many of the" clients; he "was their primary contact at AFG," and several clients testified "that their comfort and relationship with [defendant] is what caused them to move their accounts to his new firm.").

For all these reasons, the portion of G&E's breach of fiduciary duty claim premised on Guttman's alleged improper solicitation fails as a matter of law.

**B.      Guttman cannot be liable for any alleged acts taken in the course of his representation of Ms. Brown which occurred after G&E fired him.**

G&E also claims that even after Guttman's departure, after he was no longer co-counsel with G&E in *Celgene*, and in the course of Guttman's continued representation of Ms. Brown, he

somehow still owed G&E a fiduciary duty.  *See* Compl. ¶¶ 42-43.  This is not the law.  Under

blackletter District of Columbia law, "[p]ost-termination activities [ ] cannot serve as the basis

for any claim of breach of an agent's fiduciary duty to his principal . . . ."  *Draim v. Virtual*

*Geosatellite Holdings, Inc.*, 631 F. Supp. 32, 40 (D.D.C. 2009)[8]; s*ee also Econ. Research*

*Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 233-34 (D.D.C. 2016) (upon

termination of employment, an employee may compete against his former employer); *Phillips v.*

*Mabus,* 894 F. Supp. 2d 71, 93 (D.D.C. 2012) ("An employee's fiduciary duty ends upon

termination of the employment relationship.").

        Further, Guttman's post-termination conduct that G&E alleges breached a continuing

fiduciary duty was all taken pursuant to Guttman's representation of Ms. Brown in the *Celgene*

litigation.  *See* Compl. ¶ 43 (alleging Guttman refused to vouch for attorney time on the *Celgene*

Matter, refused to submit G&E's time and expenses in the *Celgene* Matter, and refused to

provide G&E with information about the settlement of the *Celgene* Matter).  The litigation

privilege bars all tort liability for conduct and statements made in the course of an attorney's

representation of a client.  *See Olsen v. Harbison*, 119 Cal. Rptr. 3d 460, 467 (2010) (dismissing

plaintiff attorney's tort claims based on former co-counsel's "disparaging" statements made to

"lure" mutual client into dismissing plaintiff as counsel because the litigation privilege protected

statements "even if the communications are alleged or proven to be false, fraudulent or the

---

[8] In *Draim*, the D.C. District Court recognized a limited exception to this general rule that is not applicable here.  Specifically, "a post-termination obligation to maintain the confidentiality of the trade secrets [] learned while employed."  *Draim*, 631 F. Supp. 2d at 40 (citing Restatement (Second) of Law of Agency § 396(b) (1958)).  Here, G&E does not allege Guttman disclosed its trade secrets or confidential information following his termination.  Further, after leaving G&E's employ, the preeminent – and likely sole -- fiduciary duty Guttman owed was to his client, Ms. Brown, not to G&E.  *See Olsen v. Harbison*, 119 Cal. Rptr. 3d 460, 470 (2010) ("reject[ing] the idea that cocounsel owed a fiduciary duty to one another, [and] noting that the duty of both attorneys to serve the best interests of the client and exercise independent judgment on the client's behalf").

product of malice.").[9]  *Olsen* is illustrative because it involved an attorney fee dispute, wherein

the plaintiff alleged that the defendant had wrongfully caused the client to fire him, and deprived

him of fees under a contingency-fee agreement.  *Id.* at 463.  The court dismissed the plaintiff's

claims for intentional interference, fraud, unjust enrichment, and imposition of constructive trust

against his former co-counsel because the absolute nature of the litigation privilege

"immunize[d] defendant[] from virtually any tort liability . . . ."  *Id.* at 467.

Moreover, to the extent G&E is suing Guttman for conduct protected by the litigation

privilege, then this suit is prohibited by California's anti-SLAPP statutes.  *See Bergstein v.*

*Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 813, 187 Cal. Rptr. 3d 36, 52

(2015), *review denied* (Aug. 26, 2015) (dismissing complaint because "Defendants' litigation

activities are at the core of plaintiffs' claims, which clearly "arise from protected activity within

the meaning of the anti-SLAPP statute.").

Thus, all portions of G&E's breach of fiduciary duty claim that are premised on actions

taken 1) after Guttman was no longer employed by G&E, and 2) in the course of Guttman's

representation of Ms. Brown, must be dismissed as a matter of law.

### C.    G&E's claim that Guttman breached his fiduciary duty in drafting its retainer agreement with Ms. Brown fails as a matter of law.

G&E's allegations that Guttman breached its fiduciary duty in drafting the retainer

agreement as to Ms. Brown in 2009 also fail as a matter of law.

The statute of limitations for breach of fiduciary duty claims under D.C. law is three

years from when a plaintiff knows, or through the exercise of due diligence, should have known,

---

[9]  This Court has recognized the application of California's litigation privilege when the communications under challenge are connected with a California-venued litigation.  *See Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 133 (D.D.C. 2013) (granting motion to dismiss all claims against law firm defendants who filed complaint in California).

that the alleged breach occurred.  *See, e.g.*, *Ling Yuan Hu v. George Washington Univ.*, 766 F. Supp. 2d 236, 243 (D.D.C. 2011); *Dubois v. Washington Mut. Bank*, Civil Case No. 09-2176 (RJL), 2010 WL 3463368, at *3 (D.D.C. Sept. 3, 2010); *Klaman v. Barmak*, 634 F. Supp. 2d 56, 64 (D.D.C. 2009).  According to G&E's Complaint, however, its retainer agreement with Ms. Brown was drafted and executed by G&E and Ms. Brown in 2009.  Compl. ¶ 9.  G&E knew the terms of its retainer with Ms. Brown at the time it was drafted, as it was executed by G&E principle Jay Eisenhofer in 2009.  Ex. 3 (Retainer Agreement).  Indeed, as a director and shareholder of G&E, Eisenhofer presumably has a duty to diligently and competently review the retainers he executes on behalf of the firm.

Thus, to the extent that G&E's breach of fiduciary duty claim is premised on G&E's retainer agreement with Ms. Brown, the claim is barred by the statute of limitations.[10]

Even if G&E's claim was timely, it fails to state a valid claim on this point.  In its Complaint, the most G&E alleges with respect to the retainer is that Guttman breached his duty by "drafting the *Celgene* Agreement in a manner that, *arguendo*, subjects it to challenge under California law."  Compl. ¶ 43.  Notably, G&E does not allege that the retainer agreement actually violates California law or was otherwise problematic.  Nor does G&E allege that Guttman was negligent or did anything improper in his supposed preparation of the retainer.  G&E has essentially alleged that Guttman *maybe* was negligent, or *maybe* violated a duty.

Although Ms. Brown contends that G&E's retainer with Ms. Brown did not comply with California law and was therefore voidable (*see* fn. 7 *supra*), G&E certainly has not alleged any such facts.  Absent any allegations in G&E's complaint demonstrating how Guttman violated his fiduciary duty with respect to the retainer agreement G&E had with Ms. Brown, and how that violation has caused G&E harm, G&E has failed to state a valid claim.  *See Twombly*, 550 U.S.

---

[10] G&E's claim against Eisenhofer presumably would be time-barred as well.

20

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure  § 1216, pp. 235-35 (3d. ed. 2004)  ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").  Here, it is not plausible that Guttman did anything improper in his supposed preparation of the retainer agreement, given that Eisenhofer reviewed and signed it, and G&E has failed to allege any specific deficiency.

For all the foregoing reasons, G&E's breach of fiduciary duty claim against Gutttman must be dismissed.

## III.    Counts III for Unjust Enrichment Must Be Dismissed.

G&E's unjust enrichment claim likewise fails to state a valid claim for relief against these Defendants.  Under D.C. law, "[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,* 944 A.2d 1055, 1076 (D.C. 2008) (quoting *News World Commc'ns, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. 2005)).  Here, G&E's claim is defective because nowhere in the Complaint does it allege that it conferred a benefit directly on either Defendant.  This omission is significant because there is "'no authority demonstrating that benefits received from third-parties can be the proper subject of an unjust enrichment claim.'"  *Terry v. Aston*, Civil Case No. 16-0086, 2017 WL 1214399, at *10 (D.D.C. Jan. 31, 2017) (quoting *Council on Am. Islamic Relations Action Network, Inc. v. Gaubatz*, 82 F.Supp.3d 344, 358–59 (D.D.C. 2015) granting summary judgment for defendant where "Plaintiffs have identified only benefits that Defendants have received from third parties")); *see also Sabre Int'l Sec. v. Torres Advanced*

21

*Enter. Sols., LLC*, 60 F. Supp. 3d 36, 41–42 (D.D.C. 2014) (dismissing claim where plaintiff failed to allege that "it conferred any benefit on the Individual Defendants directly").  If G&E conferred any benefit in this action, it was a benefit conferred upon its former client, Ms. Brown, not Defendants.  Likewise, any bounty in *Celgene*, pursuant to statute, is awarded to Ms. Brown as plaintiff-relator.  *See, e.g.*, 3 USC § 3730(d) (successful *qui tam* plaintiff-relator entitled to percentage of award, and attorney fees and costs).  Notably, G&E is pursuing this same relief in *Celgene*, in the form of a purported lien on Ms. Brown's recovery.  *Celgene Corp.*, No. 10 Civ. 3165 (C.D. Cal. June 3, 2015), Dkt. 190.  For this reason, Plaintiff's claim for unjust enrichment must be dismissed.

## IV. Count IV Must Be Dismissed Because Constructive Trust Is Not A Valid Cause of Action, And This Court Does Not Have the Authority To Impose It.

In Count IV of the Complaint, styled as a "Constructive Trust against Guttman and the Guttman Firm," G&E asks this Court to exercise its equitable authority to "impose a constructive trust for G&E's benefit" and hold on behalf of G&E "all funds paid to Guttman and the Guttman Firm in the *Celgene* Matter" in an amount "not less than $7,000,000 plus a pro rata share of the FCA relator's 'bounty' to be recovered by Ms. Brown."  Compl. ¶ 62.  A "constructive trust is a remedy that a court devises after litigation" has been adjudicated.  *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190 (D.C. Cir. 1995).  A "constructive trust is not an independent cause of action."  *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C. 2002) (request for constructive trust not an actual claim for liability, but rather a requested remedy).  Because this is not a recognized cause of action within this jurisdiction, and for all the reasons G&E's unjust enrichment claim fails, Count IV should be dismissed.[11]

---

[11] Separate but related, if this Court dismisses G&E's tortious interference, breach of fiduciary duty and unjust enrichment claims, it must dismiss Count IV as well.  *See Macharia*, 238 F.

In addition, this Court lacks authority to grant the equitable remedy requested because the District Court for the Central District of California has exclusive jurisdiction and authority over the proceeds of the settlement in *Celgene*, including Ms. Brown's relator "bounty." On July 28, 2017, after the *Celgene* parties reached a settlement agreement, the Court entered an order dismissing the action, but specifically retaining jurisdiction "to adjudicate, if necessary, Relator Brown's claim to a share of the proceeds of the Civil Action . . . ." *Celgene Corp.*, No. 10 Civ. 3165, slip op. at 2 (C.D. Cal. Jul. 28, 2017), Dkt. 495. Previously, in June of 2015, G&E, a non-party to the *Celgene* litigation, filed with the *Celgene* court an attorneys' charging lien against Ms. Brown's recovery in the case. *Celgene Corp.*, No. 10 Civ. 3165 (C.D. Cal. June 3, 2015), Dkt. 190. Ms. Brown filed a motion on October 9, 2017 that, among other things, challenges the validity of the lien on grounds that her retainer agreement with G&E was voided under California law, and requested an order that relator's share be paid immediately.[12] *Celgene Corp.*, No. 10 Civ. 3165 (C.D. Cal. Oct. 9, 2017), Dkt. 504.

Further, it is clear the Central District of California has ancillary jurisdiction to adjudicate the present fee dispute because it arises from the *Celgene* litigation. *See. e.g., Curry v. Del Priore*, 941 F.2d 730, 731–32 (9th Cir. 1991) ("Courts have long recognized that fee disputes arising from litigation pending before a district court fall within that court's ancillary jurisdiction."); *Kenneally v. Bosa Cal. LLC*, No. 09-CV-2039 WQH JMA, 2011 WL 1045136, at *3 (S.D. Cal. Mar. 22, 2011) (exercising ancillary jurisdiction over dispute relating to attorney's charging lien); *see also Novinger v. E.I. DuPont De Nemours & Co.,* 809 F.2d 212, 217 (3d Cir. 1987) (noting that ancillary jurisdiction is "particularly necessary for disputes" involving fees to

---

Supp. 2d at 31 (because the court dismissed the underlying claims, there was "no basis on which to award injunctive relief or a constructive trust.").

[12] A courtesy copy of that Motion was served on G&E as an interested third-party.

be paid to withdrawing counsel "because they bear directly upon the ability of the court to

dispose of cases before it in a fair manner").  Because the *Celgene* court has exclusive authority

to adjudicate Ms. Brown's share of the settlement proceeds in that case, as well as the validity of

G&E's charging lien, and also has ancillary jurisdiction to adjudicate the present fee dispute, this

Court does not have the authority to impose a constructive trust and hold for G&E's benefit all

funds paid to Guttman and GBB in *Celgene*, or any portion of the bounty recovered by Ms.

Brown.  This equitable remedy request thus should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court dismiss G&E's

Complaint in its entirety.

Respectfully submitted,

/s/ Susan E. Huhta
Susan E. Huhta (#453478)
Cassandra W. Lenning (#1013581)
Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West Suite
Washington, D.C.  20001
(202) 847-4414
SHuhta@outtengolden.com
CLenning@outtengolden.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss or,

Alternatively, for Summary Judgment, and Memorandum In Support, was served respectively

via ECF and via U.S. mail and e-mail on October 10, 2017 on Plaintiff's counsel whose last

known addresses are:

Paul L. Knight (#911594)
Nossaman LLP
1666 K Street, N.W., Suite 500
Washington, DC 20006
pknight@nossaman.com


John B. Harris
Nicole Bergstrom
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Ave.
New York, NY 10022
jharris@fkks.com
nbergstrom@fkks.com


*Attorneys for Plaintiff*


/s/ Susan E. Huhta
Susan E. Huhta