## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GRANT & EISENHOFER P.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:17-cv-01722 |
| | ) | |
| v. | ) | |
| | ) | |
| REUBEN A. GUTTMAN and | ) | Judge Timothy J. Kelly |
| GUTTMAN, BUSCHNER & BROOKS, | ) | |
| PLLC, | ) | |
| | | |
| Defendants. | | |

## <u>SPECIAL MOTION TO STRIKE COMPLAINT</u>

Defendants Reuben A. Guttman ("Guttman") and Guttman, Buschner & Brooks, PLLC

("GBB"), hereby file this Special Motion to Strike Plaintiff, Grant & Eisenhofer P.A. ("G&E")'s

Complaint, pursuant to California's "anti-SLAPP" statute (California Code of Civil Procedure

Section 425.16). In support of this motion, Defendants refer the Court to the attached

memorandum.

Respectfully submitted,

/s/ Susan E. Huhta
Susan E. Huhta (#453478)
Cassandra W. Lenning (#1013581)
Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West Suite
Washington, D.C. 20001
(202) 847-4414
SHuhta@outtengolden.com
CLenning@outtengolden.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GRANT & EISENHOFER P.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:17-cv-01722 |
| | ) | |
| v. | ) | |
| | ) | |
| REUBEN A. GUTTMAN and | ) | Judge Timothy J. Kelly |
| GUTTMAN, BUSCHNER & BROOKS, | ) | |
| PLLC, | ) | |
| | | |
| Defendants. | | |

**MEMDORANDUM IN SUPPORT OF**
**SPECIAL MOTION TO STRIKE COMPLAINT**

G&E's claims against Defendants in this case all are premised on allegations regarding Defendants' representation of and communications with Beverly Brown, the plaintiff-relator in a False Claims Act (FCA) case against Celgene Corporation. *See United States ex rel. Beverly Brown v. Celgene Corp.*, No. 10-Civ.-3165 (C.D. Cal.) ("*Celgene*"). Specifically, Plaintiff Grant & Eisenhofer ("G&E") alleges its former employee, Defendant Reuben Guttman, breached his fiduciary duty by soliciting Ms. Brown, and then he, along with Defendant Guttman, Buschner & Brooks, PLLC ("GBB"), interfered with G&E's contract with Ms. Brown by inducing her to terminate G&E's representation, retain GBB, and not pay attorneys fees to G&E.

Defendants vehemently deny these allegations. Indeed, Beverly Brown and Judge Nancy Gertner (ret.) have submitted declarations that explain the true story regarding Ms. Brown's decision to transfer representation of her matter to Guttman and offers to G&E to continue as counsel." *See* ECF No. 10-4 and 10-5. But even accepting the allegations in G&E's complaint as true, any such solicitation and subsequent communications would be

protected activity within the meaning of California's "anti-SLAPP" statute (Cal. Code of Civ. Pro. § 425.16) because it would involve communications between a client and his attorney related to pending litigation.  Further, G&E cannot show that it is likely to prevail on its claims because the solicitation of and communications with clients in relation to pending litigation falls within California's litigation privilege (Cal. Civil Code § 47(b)), which bars all tort liability for conduct and statements made in the course of an attorney's representation of a client.  Because the alleged conduct underlying G&E's claims arises from protected activity within California's anti-SLAPP statute, and because G&E cannot demonstrate a likelihood of prevailing on its claims, the Complaint should be stricken.

## STATEMENT OF FACTS[1]

This action arises out of a fee dispute involving G&E's representation of its former client, Beverly Brown, the plaintiff-relator in a California-venued False Claims Act (FCA) case against Celgene Corporation.  *See United States ex rel. Beverly Brown v. Celgene Corp.*, No. 10-Civ.-3165 (C.D. Cal.) ("*Celgene*").  Plaintiff Grant & Eisenhofer ("G&E") alleges its former employee, Reuben A. Guttman, and the law firm Mr. Guttman co-founded after he left G&E's employ, Guttman, Buschner & Brooks, PLLC ("GBB"), engaged in tortious conduct that allegedly caused it to lose clients.  The gravamen of G&E's complaint is that Guttman breached his fiduciary duty by soliciting G&E clients while still employed by the firm, and then interfered with G&E's contracts by inducing clients to terminate their relationship with G&E and retain GBB.  The harm G&E alleges is its failure to recoup fees for the work it supposedly performed

---

[1] The Statement of Facts is limited to the four corners of G&E's complaint.  Defendants strenuously deny the allegations that they engaged in any improper conduct, but for purposes of this Motion, Defendants treat as true all of the allegations contained in G&E's complaint.

on behalf of one former client, Beverly Brown.

Guttman joined G&E in 2007.  Compl. ¶ 10.  His practice focused on False Claims Act (FCA) cases.  *Id.*  Guttman brought Beverly Brown in as a client in 2009.  *Id.* ¶ 11.  G&E executed a retainer agreement with Ms. Brown to represent her on a contingency fee basis, whereby G&E would be awarded its lodestar, as well as 40 percent of any amount Ms. Brown recovered.  *Id.*

Ms. Brown is a resident of California and worked for Celgene in California.  Compl. ¶ 12.  G&E, through Guttman, filed the *Celgene* action on Ms. Brown's behalf in the Central District of California in 2010.  *Id.* ¶13.  Guttman was responsible for overseeing the *Celgene* litigation.  *Id.* ¶¶ 12, 14.  In addition to G&E, Ms. Brown was represented in *Celgene* by two other law firms:  Dick Harpootlian, P.A., and Beinert, Miller, and Katzman, PLC, the latter of which served as local California counsel.  *Id.* ¶¶ 32-33.

In early 2015, Guttman provided G&E with notice that of his intention to leave the firm at the end of the year.  Compl. ¶¶ 15-17.  On April 14, 2015, however, G&E "asked Guttman to leave" the firm.  *Id.* ¶ 21.  On April 24, 2015, Guttman delivered his resignation letter, as well as a letter from Ms. Brown terminating G&E as her counsel.  *Id.* ¶ 28.

The Beinert Firm served as co-counsel with G&E during the time it represented Ms. Brown, and it continued to represent Ms. Brown after she terminated G&E.  Comp. ¶ 32.  The Harpootlian firm began representing Ms. Brown after she terminated G&E.  *Id.* ¶ 33.  Following Guttman's departure, these firms engaged in negotiations with G&E regarding shared representation of Ms. Brown going forward, but G&E rejected the terms offered by co-counsel.  *Id.* ¶ 34.  Ultimately, the firms could not reach agreement, and G&E

4

voluntarily withdrew from representation of Ms. Brown in the *Celgene* litigation on May 8, 2015.  Notice of Motion and Motion to Withdraw, *Celgene*, No. 10 Civ. 3165 (C.D. Cal. May 8, 2015), Dkt. 177.[2]

Since G&E's withdrawal, Defendants have not provided G&E with information about the *Celgene* litigation and the request for attorney fees with respect to the settlement thereof.  Compl. ¶¶ 35, 38.  "G&E has demanded that Defendants, as well as Ms. Brown and the other counsel in the case, submit G&E's time and expenses in connection with the settlement . . . ."  *Id.* ¶ 39.  Defendants contend G&E is not due the fees sought herein because its retainer agreement with Ms. Brown is invalid under California law, and G&E's time incurred in *Celgene* is inflated.  *Id.* ¶¶ 35-36.

On August 10, 2017, fourteen days before it instituted this lawsuit, G&E filed suit against Ms. Brown and the Bienert and Harpootlian firms in the U.S. District Court for the Central District of California.  Compl. ¶ 8.  In that case, just as in this one, G&E is claiming that it is entitled to its fees and costs and share of the settlement amount recovered by Ms. Brown in *Celgene*.  *Grant & Eisenhofer, P.A. v. Brown,* No. 17 Civ. 05968 (C.D. Cal.), Dkt. 1.

On October 10, 2017, Defendants filed a motion to dismiss all of G&E's claims for failure to state a cause of action.  ECF No. 10.  Defendants also filed a Motion to Stay or Transfer, based on the pendency of the related California actions, ECF No. 11, and G&E has consented to transferring this case to the Central District of California, ECF No. 12.[3]

---

[2] Between the filing of the *Celgene* litigation in 2010 and G&E's withdraw in 2015, the case was stayed for approximately four years while the government investigated and determined whether to intervene.  *Celgene*, No. 10 Civ. 3165, Dkt. Nos. 59, 101.

[3] Defendants file this motion to preserve their rights pending the Court's determination on their consented to Motion to Transfer.  This filing does not impact Defendants' view that transfer is

**ARGUMENT**

California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") Statute was enacted to prevent and deter lawsuits brought primarily to chill the valid exercise of individuals' right of petition and free speech. *Varian Medical Systems, Inc. v. Delfino*, 35 Cal.4th 180, 192 (2005).   As one California appellate court plainly put it, the core purpose of the California anti-SLAPP statute "is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315, 1317 (2004).  The statute must "be construed broadly."  Cal. Code Civ. Pro. § 425.16(a).  The constitutional right to free petition includes not only the filing and maintenance of a lawsuit, but also all incidental activities such as communications between a client and her attorney, all of which is activity protected by the anti-SLAPP statute. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006).[4]

When presented with a special motion to strike under California's anti-SLAPP statute, courts apply a two-step process.  First, the court determines "whether the defendant showed that the plaintiff's causes of action 'arise from an act in furtherance of the defendant's rights of petition or free speech.'" *Graham-Sult*, 756 F.3d at 735 (quoting *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)).  If so, the plaintiff must then show that it has "a reasonable probability of prevailing in its claims for those claims to survive dismissal.'" *Id.* (citing *Mindy's*, 611 F.3d at 598).  If the defendant meets its burden to show that a cause of

---

warranted.  This Motion and other pending motions can properly be heard in California. The Bienert and Harpootlian firms have filed a similar anti-SLAPP motion that is pending before the Central District of California, which Defendants have sought to join as interested parties.

[4] California's anti-SLAPP statute applies to Defendants' alleged conduct because G&E's claims arise out of Defendants' representation of and communications with a California resident in a California-venued federal litigation.

action arises from protected conduct and the plaintiff fails to meet its burden under the second

step by showing a probability of prevailing on the merits, then the cause of action must be

stricken.  *Governor Gray Davis Com. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456

(2002).

With regard to the first step of the analysis, here it is clear that G&E's claims against

Defendants arise from acts in furtherance of Defendants' rights of petition or free speech.  An act

is "in furtherance of a person's right of petition or free speech . . . in connection with a public

issue'" if it includes "any written or oral statement or writing made in connection with an issue

under consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law[.]"  Cal. Code Civ. P. § 425.16, subd. (e), cl. (2).  "In the anti-

SLAPP context, the critical consideration is whether the cause of action is *based on* the

defendant's protected . . . petitioning activity."  *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

The Statute's focus "is not the form of the plaintiff's cause of action but, rather, the defendant's

*activity* that gives rise to his or her asserted liability[.]"  *Id.* at 92.

All statements or writings made in litigation, or in connection with litigation, are

protected by the anti-SLAPP statute.  Specifically, the statute protects statements made during or

in connection with judicial proceedings, as well as "other conduct in furtherance of the

constitutional right of petition."  CCP § 425.16(e); *Bergstein v. Stroock & Stroock & Lavan LLP*,

236 Cal. App. 4th 793, 803 (2015).  Courts have taken a "fairly expansive view of what

constitutes litigation-related activity for purposes of section 425.16," *Bergstein*, 236 Cal. App.

4th at 803-04, to "protect the right of litigants to the utmost freedom of access to the courts

without fear of being harassed subsequently by derivative tort actions."  *Rohde v. Wolf*, 154 Cal.

App. 4th 28, 35 (2007) (internal quotations omitted).  In fact, the protections offered by section

425.16(e) are so broad that "*all* communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are *per se protected* as petitioning activity under the anti-SLAPP statute." *Contreras v. Dowling*, 5 Cal. App. 5th 394, 409 (2016) (emphasis added); *see also GeneThera, Inc. v. Troy & Gould Professional Corp.*, 171 Cal. App. 4th 901, 905-06 (2009) ("An attorney's communication with opposing counsel on behalf of a client regarding pending litigation," including settlement, "directly implicates the right to petition and thus is subject to a special motion to strike."); *Bergstein*, 236 Cal. App. 4th at 811 (dismissing complaint because "Defendants' litigation activities," which included "devising the legal strategy" and "drafting multiple lawsuits" were at the core of plaintiffs' claims, which clearly "arise from protected activity within the meaning of the anti-SLAPP statute."); *Contreras*, 5 Cal. App. 5th at 411 (giving advice to a client, which led to a breach of an agreement, and writing a letter to opposing counsel were "unquestionably protected activities" under the anti-SLAPP statute).

Here, each of G&E's claims arise from protected activity because they each involve allegations that Defendants solicited G&E's clients, in particular Ms. Brown, to terminate G&E and retain GBB. *See, e.g.,* Compl. ¶ 1 (alleging Guttman "engage[d] in extensive, secret solicitation . . . inducing Ms. Brown to leave G&E"); *id.* ¶ 25 (Guttman "solict[ed], unilaterally and surreptitiously, G&E clients, including Ms. Brown, to leave G&E and join him at a new firm that he was creating"); *id.* ¶ 29 ("inference that Guttman was engaged in soliciting clients"); *id.* ¶ 30 ("induced clients to leave G&E based solely on his unilateral solicitation."); *id.* ¶ 32 ("Guttman wrongfully induced Ms. Brown to take the *Celgene* Matter to the Guttman Firm."); *id.* ¶ 33 ("Guttman stole the [*Celgene*] matter from G&E"); *id.* ¶ 43 ("soliciting Ms. Brown to leave G&E"); *id.* ¶ 48 ("soliciting Ms. Brown").  G&E also alleges Defendants breached a duty

to G&E by refusing to vouch for attorney time on the *Celgene* Matter, refusing to submit G&E's time and expenses in the *Celgene* as part of any fee request, and refusing to provide G&E with information about *Celgene* settlement.  *Id.* ¶ 43.  Simply put, G&E alleges Defendants conversed with their client regarding who should represent her in the *Celgene* matter, the legal validity of G&E's fee agreement in *Celgene*, and how she should respond to G&E's demand for fees and costs in *Celgene*.  All of this alleged tortious conduct arises from and directly relates to the advice and representation Defendants provided to their client in *Celgene*.

Such alleged solicitation and inducement, even if true, is protected activity made in connection to pending litigation.  Indeed, California courts have consistently held that claims based on the alleged wrongful solicitation of clients by an attorney are subject to the Anti-SLAPP statute.  *See, e.g., Gribow v. Burns*, No. E049140, 2010 WL 4018646, at *8 (Cal. Ct. App. Oct. 14, 2010) (affirming the striking of tortious interference and breach of fiduciary duty claims because they involved "the solicitation of the clients concerned pending litigation and were thus statements made in connection with an issue under consideration by a judicial body."); *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 489 (2008) (striking tortious interference claim because "it is difficult to conjure a clearer scenario . . . of a lawsuit arising from [Anti-SLAPP] protected activity" than one involving "improper solicitation" by an opposing attorney).

Both *Gribow* and *Taheri* are illustrative.  In *Taheri*, the plaintiff law firm had represented a client, Sorokurs, which had terminated the plaintiff and hired defendant Evans as its new attorney.  160 Cal. App. 4th at 485.  The plaintiff alleged defendant induced Sorokurs to terminate plaintiff and that Evans had lured the client away by "promising 'unobtainable and ethically improper litigation objectives.'"  *Id.* at 485-86.  Defendant Evans brought an anti-SLAPP motion, and the plaintiff argued in response that "solicitation of another attorney's client

is not subject to the protections of [] the anti-SLAPP statute." *Id.* at 489.  The Court of Appeal rejected this argument: the "complaint plainly shows it arose from Evans's communications with Sorokurs about pending litigation" and therefore the lawsuit arose from protected activity and was subject to the anti-SLAPP statute.

Similarly, in *Gribow*, the plaintiff attorney Gribow alleged defendant attorneys Burns and Robinson left plaintiff's law firm to form a competing law firm and had solicited clients away from Gribow and to the new firm.  2010 WL 4018646, at *1.  Gribow sued the defendants for, among other things, breach of fiduciary duty and tortious interference with contract.  The trial court held all of the tort claims were subject to the anti-SLAPP statute because they arose directly from communications between the clients and defendants about pending lawsuits.  *Id.* at 4.  On appeal, the court reviewed the allegations in support of the claims for breach of fiduciary duty and tortious interference, which involved 1) denying Gribow the opportunity to compete for and persuade certain clients to remain with plaintiff, 2) wrongfully soliciting clients, and 3) inducing said clients to leave Gribow's firm with the defendants.  *Id.* at *8.  The appellate court held "the protected conduct (the solicitation of clients) [was] not merely incidental or collateral" to any unprotected conduct, so the claims were subject to the anti-SLAPP statute.

As in *Taheri* and *Gribow*, all of the alleged activity underlying G&E's tort claims is subject to the anti-SLAPP statute because it arises out of Guttman's alleged communications with his client, Ms. Brown, relating to the still-pending *Celgene* litigation.  Indeed, the gravamen of G&E's complaint is Guttman "solicited" Ms. Brown to leave G&E (Compl. ¶ 1, 25, 29, 43, 48) and Defendants "induced" Ms. Brown to take *Celgene* to GBB (Compl. ¶¶ 30, 32).  As the cases cited above demonstrate, an attorney's communication with a client relating to pending litigation is given *per se* protection under the anti-SLAPP statute.  Further, it is clear from *Taheri*

and *Gribow*, that an attorney's solicitation of a client in relation to pending litigation is also *per se* protected activity.

Taking all of G&E's allegations as true, it has not alleged anything more than that Defendants engaged in communications with their client regarding her rights, obligations, representation, and legal strategies in connection with a pending lawsuit.  These are precisely the types of allegations to which the anti-SLAPP statute applies, and the first requirement of the anti-SLAPP analysis is therefore satisfied.  Defendants' alleged communications with Ms. Brown regarding the still-pending *Celgene* matter, including any alleged solicitation, are *per se* protected by the anti-SLAPP statute.

Regarding the second step in the anti-SLAPP analysis, the question is whether G&E could show a likelihood of success in its stated claims for relief against Defendants.  To satisfy this standard, G&E must not only produce admissible evidence sufficient to prove a *prima facia* case for each of its claims, but it must also overcome any applicable defenses or privileges. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005); *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1206 (2011).  Because Defendants' communications with their client, including any alleged solicitation, falls squarely within California's litigation privilege , G&E cannot meet its burden to show a probability of success on the merits.

The litigation privilege, embodied in California Civil Code section 47(b), applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action."  *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).  "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the

communication be connected with, or have some logical relation to, the action, i.e., that it not be

extraneous to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 219-20 (1990).

"The breadth of the litigation privilege cannot be understated.  It immunizes defendants

from virtually any tort liability," including claims for fraud.  *Olsen v. Harbison*, 119 Cal. Rptr.

3d 460, 467 (2010).  It even protects "communications alleged or proven to be false, fraudulent

or the product of malice."  *Id.* at 332.  The privilege's broad scope is in line with its fundamental

purpose – to "afford litigants and witnesses the utmost freedom of access to the courts without

fear of being harassed subsequently by derivative tort actions," while "encourag[ing] attorneys to

protect their clients' interests."  *Id.* at 333.  Indeed, the privilege is "extended to attorneys to

protect them from the fear of subsequent derivative actions for communications made in the

context of judicial proceedings."  *Id.*[5]

The "key in determining whether the privilege applies is whether the injury allegedly

resulted from an act that was communicative in its essential nature." *Rusheen v. Cohen* 37

Cal.4th 1048, 1058 (2006).  "[I]f the gravamen of the action is communicative, the litigation

privilege extends to noncommunicative acts that are necessarily related to the communicative

conduct . . ."  *Id.*  Courts have found that attorney or law firm solicitation of clients for litigation

is a communicative act, and apply the litigation privilege to bar tort liability in such

circumstances.  *See, e.g., Gribow*, 2010 WL 4018646, at *11 (holding the litigation privilege

---

[5] *Olsen v. Harbison* is illustrative.  In *Olsen*, the plaintiff attorney (Olsen) was hired to represent a client, Klawitter, in a lawsuit.  *Id.* at 328.  Olsen subsequently associated the defendant Harbison, a more experienced trial counsel, into the case as co-counsel.  *Id.*  A few weeks later, Klawitter fired Olsen, kept Harbison on as her sole counsel, and the case was subsequently settled for $775,000.  *Id.* at 329.  Olsen received no portion of this settlement, and sued to recover his fees. *Id.* The court dismissed Olsen's intentional interference with contract and other tort claims, premised on his former co-counsel's "disparaging" statements made to "lure" Klawitter into dismissing Olsen as counsel because the absolute nature of the litigation privilege "immunize[d] defendant[] from virtually any tort liability").

provided attorney defendants with immunity from tortious interference and breach of fiduciary duty claims because "soliciting clients with respect to litigation is a communicative act within the scope of the litigation privilege"); *Rubin v. Green*, 4 Cal.4th 1187, 1196 (1993) (holding law firm "was absolutely immune from civil tort liability" for solicitation because it was communicative in their nature and therefore within the litigation privilege).

Again, *Gribow* is instructive.  There, the court found the gravamen of the claims were that defendants wrongfully solicited plaintiff's clients, resulting in the lost benefit of his existing client contracts and millions of dollars in attorney fees.  *Gribow*, 2010 WL 4018646, at *4, 11. The appellate court found that the "essential injury" to Gribow was "the loss of fees caused by the departure of the [two] clients," and the "clients' departure was caused . . . most directly by [the defendants'] solicitation of them."  *Id.* at *12.  "Because the gravamen of the claim [was] the communicative act of soliciting the [two] clients," the litigation privilege provided the defendants with immunity from the tort claims.  *Id.*

As in *Gribow*, here the essential injury G&E complains of is it failure to recover its attorney fees or any portion of the *Celgene* settlement proceeds.  G&E's tort claims are based on Defendants' alleged solicitation of Ms. Brown, *i.e.* communications with their client regarding the retention of counsel.  These alleged interactions were "linked to ongoing litigation" – the pending *Celgene* matter – and, just like in *Olsen*, these interactions concerned who was going to represent the client and how the litigation was to be conducted and managed.  Here, as in *Olsen, Gribow,* and *Rubin,* the litigation privilege is dispositive of all the claims against Defendants for their alleged tortious conduct.

Thus, Defendants have demonstrated that 1) all of the alleged conduct G&E's complains of is protected activity within the meaning of California's anti-SLAPP statute, and 2) G&E

cannot show it will prevail in its tort claims because the acts complained of fall within California's litigation privilege, which bars all tort liability.

As a final matter, a defendant who prevails on a motion under California's anti-SLAPP statute is entitled to recover attorney fees and costs.  Cal. Code Civ. Pro. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Defendants will seek attorneys' fees and costs by separate motion if this motion is granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request G&E's Complaint be struck in its entirety, and Defendants be awarded, upon subsequent noticed motion, reasonable attorney's fees and costs incurred in prosecuting this motion.

Respectfully submitted,

/s/ Susan E. Huhta
Susan E. Huhta (#453478)
Cassandra W. Lenning (#1013581)
Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West Suite
Washington, D.C.  20001
(202) 847-4414
SHuhta@outtengolden.com
CLenning@outtengolden.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Special Motion to Strike Complaint was served via ECF on October 26, 2017 on Plaintiff's counsel whose last known addresses are:

Paul L. Knight (#911594)
Nossaman LLP
1666 K Street, N.W., Suite 500
Washington, DC 20006
pknight@nossaman.com


John B. Harris
Nicole Bergstrom
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Ave.
New York, NY 10022
jharris@fkks.com
nbergstrom@fkks.com


*Attorneys for Plaintiff*

/s/ Susan E. Huhta
Susan E. Huhta